UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:24-cr-125 (LMB) |
| ) | |
| JOSE ALEXANDRO BELMONTE ) | Sentencing: April 15, 2025 |
| CARDOZO, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Title 18 U.S.C. § 3553(a), Mr. Jose Belmonte Cardozo, through counsel, notifies the Court that he has received and reviewed the Pre-Sentence Investigation Report ("PSR"). Mr. Belmonte Cardozo agrees with the Probation Officer's calculation of the advisory Sentencing Guideline range, which statistics show to be regularly disregarded in cases such as this—in which the Guidelines often recommend life-without-parole as the "minimally sufficient" sentence even upon a defendant, such as Mr. Belmonte Cardozo, who has fully accepted responsibility, has no criminal history, and did not engage in a "contact" offense.[1] The mandatory-minimum sentence in this case of 15 years is itself a very substantial punishment. Mr. Belmonte Cardozo submits that such a sentence, which is consistent with many sentences imposed in this Court in similar circumstances, is appropriate here.

---

[1] According to the Judiciary Sentencing Information Network (JSIN), offenders sentenced nationally in the situation presented here are sentenced within the Guideline range only 24% of the time (and, because the range is life, they cannot be sentenced above it). *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (applying USSG § 2G2.1, final offense level 43 and Criminal History Category I).

## I. Legal Standard

At sentencing, this Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a) (emphasis added). Although this Court must calculate and consider the Sentencing Guidelines applicable to Mr. Belmonte Cardozo's case, it *may not* presume that a within-Guidelines sentence is reasonable. *See, e.g.*, *Nelson v. United States*, 555 U.S. 350, 352 (2009) (reversing and remanding due to District Court's erroneous presumption that a within-Guidelines range sentence was reasonable). Rather, this Court must independently assess the factors enumerated in 18 U.S.C. § 3553(a) to fashion an appropriate sentence "for the individual defendant."[2] *Id.* at 351.

In this case, one of those factors is the range of sentences statutorily available. As already noted, in this case that means the Court must impose a sentence of at least fifteen years' incarceration. That sentence itself reflects the seriousness of the conduct for Mr. Belmonte Cardozo has pleaded guilty and accepted responsibility.

---

[2] Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

## II. The Sentencing Guideline applicable to production cases are not the product of empirical data, national experience, or independent expertise, and courts regularly vary downward in such cases.

After *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), the fact that a guideline (or amendment to a guideline) was spawned by congressional action often indicates that it is not empirically based, raising the question whether the guideline sound sentencing judgment based on reliable data. *See Gall*, 552 U.S. at 46 n.2 ("For example, the Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes."); *Kimbrough*, 552 U.S. at 109 ("The crack cocaine Guidelines . . . do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'").

That is exactly what occurred in the case of the production guidelines that drive the sentencing range here. The guideline base offense level is not based on careful and empirical study by the Sentencing Commission. Instead, it was contrived by the Commission to execute Congressional mandates. That is, the base offense level of 32 reflects not the Commission's conclusion as to the appropriate base offense level after study, but, instead, Congress's decision to increase the mandatory minimum sentence for these offenses to 15 years, rather than 10 years, in the Prosecutorial

Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, (the "PROTECT Act"), Pub. L. 108-21.[3]

Thus, as the applicable guideline range begins with a guideline that is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it can, even in a mine-run case, "yield[] a sentence 'greater than necessary' to achieve §3553(a)'s purposes . . ." *Kimbrough,* 552 U.S. at 110. Indeed, a guideline that does not "exemplify the Commission's exercise of its characteristic institutional role" is not entitled to deference. *Id.* at 109.

Furthermore, the guidelines for production do a poor job of distinguishing among offenders because there are several enhancements that apply in the majority of cases, rather than in outlier cases. For example, almost all such offenders will receive an enhancement for the "age of the victim," given that all minors other than 16- through 18-year-olds trigger an upward enhancement pursuant to. USSG § 2G2.1(b)(1).[4] Likewise, many defendants are subject to the enhancement in

---

[3] *See* USSG Amendment 664 (2003) (noting that Commission increased § 2G1.2 base offense level from 27 to 32 because, "combined with the application of several specific offense characteristics that are expected to apply in almost all production cases (*e.g.*, age of the victim), this base offense level will ensure that the 15 year mandatory minimum (180 months) will be met by the Chapter Two calculations almost every case").

[4] *See* U.S. Sent. Comm'n, "Federal Sentencing of Child Pornography Production Offenses" (Oct. 2021) [hereinafter "2021 Commission Production Report"] at 20, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last visited April 8, 2015) (showing that over 90% of § 2G2.1(b)(1) offenders received an enhancement due to age of the victim in FY 2019). *See also* Amendment 664 (2003)

§ 2G2.1(b)(6) for use of a computer to solicit minors to participate in sexual explicit conduct as computers become more and more a part of every living moment for most people.[5] These enhancements, for conduct that the evidence shows to be essentially run-of-the-mill production, added 6 levels to the guidelines applicable to Mr. Belmonte Cardozo's most serious offense (which drives the applicable Guideline range). Similarly, more than half of production offenders sentenced in FY 2019 "received enhanced penalties under § 4B1.5(b) for engaging in a pattern of activity involving prohibited sexual conduct."[6] This means that circumstances that exist in ordinary production cases have added 11 levels to Mr. Belmonte Cardozo's guideline range (on top of the five-level increase in the base offense level that was incorporated to match the Guideline to the mandatory minimum rather than on the basis of empirical data). Finally, Mr. Belmonte Cardozo receives five *additional* offense levels for "grouping," see PSR ¶ 117, because pleading to multiple counts was the cost exacted by the government for preserving his right to appeal this Court's denial of his suppression motion—a fact that has nothing at all to do with the seriousness of the conduct or the need for sentencing.

---

(noting that this is one of several "several specific offense characteristics that are expected to apply in almost all production cases").

[5] *Id.*

[6] *See* 2021 Commission Production Report at 19 (showing that § 4B1.5(b) was applied in 51.6% of cases in 2019).

Thus, the Sentencing Guidelines fail to meaningfully differentiate between offenders in this sort of case and provide the Court with little guidance. Sentencing trends in production cases reflect that many courts agree that although these offenses are indisputably serious, the suggested guideline ranges in these cases are not helpful. Indeed, as noted at the outset, approximately three-quarters of federal courts faced with the Guideline range applicable here, and the offense Guideline applicable here, impose a sentence below the advisory Guideline range.

For all of these reasons, this Court should give little weight to the advisory sentencing range in this case.

### III. The 18 U.S.C. § 3553(a) Factors Support a 15-Year Sentence.

Mr. Belmonte Cardozo's personal history and characteristics support imposition of the 15-year mandatory-minimum sentence. As the PSR reflects, Mr. Belmonte Cardozo is a 31-year-old native of Bolivia, and naturalized citizen, who came to the United States at a young age after being raised during his formative years by his maternal grandparents. He has a long and stable work history, and as already noted, no criminal history (save for two driving offenses that do not count toward criminal history under the Sentencing Guidelines) and no history of substance abuse.

The many letters from family and friends attached as Exhibit A attest to the close-knit family Mr. Belmonte Cardozo enjoys, as well as the strong community

support he will have in the future.[7] Moreover, many of the letter-writers attest to Mr. Belmonte Cardozo's many contributions to his family and community. A cousin, for example, writes at length about how supportive Mr. Belmonte Cardozo was throughout a major health scare she experienced that eventually resulted in her needing brain surgery; his support continued throughout her hospitalization and her lengthy post-operative period. *See* Exh. A at 1-2 (Letter of Elizabeth Escobar). Similarly, his younger sister Arlet explains how valuable Mr. Belmonte Cardozo has been to her and her mother (his immediate family), especially as their mother faced a serious health challenge of her own (Exh. A at 3):

> When our mom had surgeries, he stepped up to take care of us. During the pandemic, when she was stuck in another country, he made sure we were okay. He was always the one looking out for everyone—the person people turned to for support. He spent so much time helping others that, at times, I felt a little jealous of how kind he was and how much time he gave to people. But he also made time for me, taking me out to new places to help me get my mind off things when I was struggling.

Importantly, none of Mr. Belmonte Cardozo's family make any excuses for his conduct. They acknowledge the seriousness of the offense, and many talk about the genuine remorse he has expressed to them, as well as his openness to receiving whatever treatment he needs to assure that he refrains from similar conduct in the future. The fact that so many in his community support Mr. Belmonte Cardozo

---

[7] Two of the attached letters were written in Spanish. An English translation of each of those letters is included in Exhibit A, immediately prior to the original letter in Spanish.

despite his offense conduct speaks not only to the strong ties he has built in his family and community, but also to the strong support network he will have upon his release from incarceration.

The psychological report from Dr. Travis Flower (filed separately under seal) also supports imposition of the mandatory-minimum sentence. As Dr. Flower explains, Mr. Belmonte Cardozo has faced numerous psychological challenges throughout his life, and in particular was experiencing a host of significant stressors culminating around the time of much of the offense conduct. Flower Report at 5-6. None of that, of courses, explains or excuses the offense conduct, but Dr. Flower notes—as many of his family note in their own letters—that "Mr. Belmonte Cardozo appears highly motivated to engage in all necessary treatment." *Id.* at 6. Moreover, Mr. Belmonte Cardozo's lack of substance abuse history and other factors identified by Dr. Flower indicate that he is a good candidate for treatment and a relatively low risk of recidivism. *Id.*

Other cases sentenced in this District confirm that a fifteen-year sentence is consistent with sentences often imposed upon defendants who have engaged in similar or more aggravated conduct than that presented here.[8] While no two cases are the same, the following examples illustrate that the sentence requested here is

---

[8] The fact that Mr. Belmonte Cardozo pleaded guilty to multiple counts does not meaningfully distinguish the facts of this case from those involving a single count. A plea to all the counts in the Indictment was the United States' demand in exchange for a plea that permitted Mr. Belmonte Cardozo to appeal the Court's denial of his motion to suppress.

consistent those imposed in similar cases, and that a sentence consistent with the Guidelines or the government's sentence request would create a dramatic and unwarranted sentencing disparity:

In *United States v. Hashime*, No. 1:12-cr-329 (LMB), the defendant, a 20-year-old male, was sentenced to 15 years for production of child pornography. The defendant posed as a young girl and coerced minors to send nude photos. He ultimately produced and distributed child pornography to an undercover agent (by comparison, Mr. Belmonte Cardozo never distributed the images he produced). Further, unlike the instant case, the defendant exercised his constitutional right to a trial, and thus did not accept responsibility.

In *United States v. Kolhoff,* No. 1:21-cr-158 (LMB), the defendant, a 22-year-old female, was sentenced to 15 years for production of child pornography. She created and shared sexually explicit images of her infant daughter on a website designed to produce and distribute child exploitative material. Like Mr. Hashime, the defendant went to trial and did not accept responsibility.

In *United States v. Velasquez*, No. 1:13-cr-89 (AJT), the defendant, a 27-year-old male, was sentenced to 192 months, or 16 years, for production of child pornography. He received and recorded videos of minors and threatened to expose one of them if they did not continue making videos and also met one of the minor victims and engaged in sexual contact with her. The defendant had a prior conviction

for having sexual intercourse with a child.[9] The defendant absconded prior to his plea date and was arrested in Texas by the FBI.

In *United States v. Lehofer*, No. 1:22-cr-82 (MSN). the defendant, a 37-year-old male, was sentenced to 228 months, or 19 years, for sexual exploitation of a minor. He engaged in conversations with a minor victim, recorded sexual acts of the victim during video calls, and ultimately threatened her for months to coerce her to send additional explicit content. At the time of his conviction, the defendant was already a registered sex offender, having been convicted of sexual abuse of two minors years prior.

In *United States v. Janes*, 1:23-cr-140 (LMB), the defendant, a 27-year-old male, was sentenced to 15 years for production of child pornography (where, as here, the Sentencing Guideline range was life), for communicating with multiple teens and at least one preteen victim to coerce them to produce and send CSAM to him, one of whom—unlike Mr. Belmonte Cardozo—he arranged to meet in person.

In *United States v. Friedel*, 1:14-cr-383 (TSE), the Court imposed a sentence of 192 months, or 16 years, upon a 29-year-old defendant who produced child pornography of multiple victims, some of whom he recorded during in-person sexual encounters with him.

As the above cases demonstrate, a 15-year sentence in this case would be consistent with sentences often imposed in similar cases, while a lengthy sentence of

---

[9] *See* Gov't Position, No. 1:13-cr-89, ECF No. 59, at 1.

the type requested by the government would result in an unwarranted sentencing disparity. A 15-year sentence will also amply deter Mr. Belmonte Cardozo and protect the public. He will be completely incapacitated for 15 years, and essentially incapacitated through federal probation officers' monitoring, intense supervision and sex-offender registration for many years thereafter. He will have no contact with minors, other than in a limited and supervised setting, and will not be able to use any computer or internet-connected device without Probation knowing he is using it and without monitoring software installed. He further understands that any future violation will necessarily incur even more drastic consequences, not only as a violation of the conditions of supervision, but also pursuant to the recidivist provisions in chapter 110 of Title 18.

Moreover, there is scant evidence that a longer sentence will do more to deter future offenses than a 15-year sentence will. To the contrary, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."[10] Therefore, there is little empirical support for the

---

[10] Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ("Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence."); see also National Institute of Justice, *Five Things about Deterrence*, at 1 (May 2016), available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf (stating, among other things, that "[i]ncreasing the severity of punishment does little to deter crime," and "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment"); Ellen Raaijmakers et al., *Exploring the Relationship Between Subjectively Experienced Severity of Imprisonment and Recidivism: A Neglected Element in Testing Deterrence Theory*, 54 J. of Research in Crime and Delinquency 1, 4 (2017) ("[T]he available evidence points

notion that a sentence longer than that proposed here will be any more effective at accomplishing either specific or general deterrence.

## CONCLUSION

For all the foregoing reasons, Mr. Belmonte Cardozo respectfully submits that the mandatory minimum sentence of 15 years, concurrent on each count of conviction, to be followed by a substantial term of supervised release, is sufficient to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a). Further, Mr. Belmonte Cardozo agrees with the Probation Office that he lacks the ability to pay a fine. *See* PSR ¶ 155. For the same reasons, the Court should decline to impose assessments under the JVTA or AVAA.[11] Finally, Mr. Belmonte Cardozo requests that the Court

---

toward a null or a slightly criminogenic effect of imprisonment but has rarely found support for a clear specific deterrent effect."); Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013) ("[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased."); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity").

[11] By its terms, the JVTA assessment applies only to "non-indigent" defendants. *See* 18 U.S.C. § 3014. The AVAA (18 U.S.C. § 2259A) permits an assessment up to $50,000, considering the 18 U.S.C. § 3553(a) factors as well as the 18 U.S.C. § 3572 factors (which include the defendant's income, earning capacity and financial resources). In this case, Mr. Belmonte Cardozo has been found indigent for purposes of appointing counsel, and has minimal assets and substantial debt. Further, he is facing a lengthy term of incarceration and has a separate restitution obligation. In these circumstances, the Court should decline to impose any assessments under the JVTA or AVAA.

-13-

recommend that he be designated for service of his sentence to FCI Butner or otherwise to a facility as close as possible to Northern Virginia to be near his family.

                                Respectfully submitted,

                                JOSE ALEXANDRO
                                BELMONTE CARDOZO

                                By Counsel,
                                Geremy C. Kamens,
                                Federal Public Defender

By:         /s/
                                Todd M. Richman
                                Va. Bar # 41834
                                Assistant Federal Public Defender
                                Counsel for Mr. Belmonte Cardozo
                                1650 King Street, Suite 500
                                Alexandria, Virginia  22314
                                (703) 600-0845 (telephone)
                                (703) 600-0880 (facsimile)
                                Todd_Richman@fd.org (email)